COMMISSIONER OF INSURANCE *v.* CENTRAL WEST
CASUALTY CO.

APPEAL OF CITY OF DETROIT.

1. BONDS—STATUTES.

A statutory bond is one commanded or provided by statute.

2. SAME—STATUTE AS PART OF BOND.

In a statutory bond, the existing law becomes a part of the
bond, omitted conditions required by law are read into the
bond and conditions, especially those limiting or restricting
liability, contrary to the law are read out of it as surplusage;
but such rule as to inclusion and exclusion applies only to
bonds required by statute.

3. SAME—STATUTES—STATUTE OF LIMITATIONS.

In a statutory bond the general statute of limitations becomes
a part of the bond (3 Comp. Laws 1929, § 13976).

4. SAME—COMMON LAW—LIMITATION OF ACTIONS.

In a common-law bond the parties may provide for a shorter
time for bringing suit than is provided by the statute of
limitations and, generally, are bound by their agreement (3
Comp. Laws 1929, § 13976).

5. SAME—CONSTRUCTION.

The effect of the provisions of a bond may be determined by
comparing the bond to the statute requiring it.

6. SAME—DEPOSITORY BONDS.

The general rule as to reading statutory provisions into bonds
required by statute and rejecting as surplusage such condi-
tions of the bond as may be contrary thereto applies to de-
pository bonds given to secure public funds.

7. SAME—HOME RULE CITIES—DEPOSITORY BOND.

Since a depository bond, executed pursuant to provisions of
ordinance relative to terms and conditions of deposit of
home-rule city funds, does not have the effect of a statutory
bond, a provision therein establishing a 12-month period for
commencement of an action thereunder as amended by a sub-
sequent three-year extension agreement was valid and barred
action by city after expiration thereof (Detroit Ordinance
No. 125-C).

Liability on official bond where surety's undertaking is less ex-
tensive than statutory requirements, see Restatement, Security, § 169.

8. SAME—HOME RULE CITIES—SINKING FUNDS—STATUTES.

Bond given by depository for sinking fund moneys of a home-rule city pursuant to its ordinance relative to deposits of its funds during a period in which statutes relative to deposit of such moneys did not require a bond, which bond provided a 12-month period within which action thereunder must be commenced, a provision later amended so as to extend period for three years, did not conflict with any State law on the subject at time bond was executed; hence, was valid (Act No. 273, § 5, Pub. Acts 1925, as amended by Act No. 142, Pub. Acts 1931; Act No. '40, Pub. Acts 1932 [1st Ex. Sess.]; Detroit Ordinance No. 125-C).

9. COSTS—PUBLIC QUESTION—DEPOSITORY BONDS.

No costs are allowed in suit by home-rule city to recover on bond given by depository for deposit of certain city funds deposited pursuant to an ordinance, a public question being involved (Detroit Ordinance No. 125-C).

Appeal from Wayne; Callender (Sherman D.), J. Submitted January 14, 1942. (Docket No. 42, Calendar No. 41,722.) Decided May 18, 1942. Rehearing denied July 1, 1942.

Receivership proceeding in the matter of Eugene P. Berry, Commissioner of Insurance for the State of Michigan, against the Central West Casualty Company. On petition of the City of Detroit, a municipal corporation, for allowance of a claim on a deposit bond. The receiver of the Central West Casualty Company filed objections thereto. From order disallowing claim, City of Detroit appeals. Affirmed.

*Paul E. Krause,* Corporation Counsel, and *Paul T. Dwyer,* Assistant Corporation Counsel, for the City of Detroit.

*Walter I. McKenzie (Edward Command,* of counsel), for receiver of Central West Casualty Company.

SHARPE, J. This suit involves an appeal from an order of the circuit court of Wayne county, in chan-

cery, denying a claim of the city of Detroit against the receiver of the Central West Casualty Company.

The facts are not in dispute and many are stipulated. On May 5, 1931, the common council of the city of Detroit adopted Ordinance No. 125-C, taking effect May 7, 1931. This ordinance defines the terms and conditions under which any officer, commission or agent of the city of Detroit should make a deposit of funds in any bank, trust company or other depository. On May 19, 1931, the common council adopted a resolution designating the Union Guardian Trust Company as a depository for the Detroit city sinking fund, the sinking fund reserve, and the general reserves. On July 1, 1931, the city of Detroit and the Union Guardian Trust Company, pursuant to the above resolution, entered into depository contracts covering the above-mentioned moneys. On June 1, 1932, effective as of May 29, 1932, the trust company, as principal, and the Central West Casualty Company, as surety, executed a depository bond to the city of Detroit as obligee in the penal sum of $300,000; and on or about February 13, 1933, other bonds had been issued to the city of Detroit, as obligee, covering designated funds deposited by the city of Detroit in the Union Guardian Trust Company.

On February 14, 1933, the Union Guardian Trust Company failed to reopen and the city of Detroit had on deposit with the trust company moneys in excess of $3,500,000. On February 28, 1933, the city of Detroit attempted to withdraw its funds from the trust company, but payment was refused. On or about March 6, 1933, a claim and demand was made on the Central West Casualty Company and on or about April 26, 1933, a sworn proof of claim and demand was served upon the defendant surety company.

On April 4, 1933, Charles E. Gauss, commissioner of insurance for the State of Michigan, was appointed custodian of the Central West Casualty Company and on October 25, 1938, he was appointed permanent receiver to liquidate said company. On or about August 14, 1933, the city of Detroit entered into an agreement with the Central West Casualty Company as well as other surety companies, whereby the city entered into a "depositors' protective agreement" with the Union Guardian Trust Company. The agreement provided among other things: "If any of said surety bonds provide that suit must be brought within a specified time, such time is extended for a period of three years." The form of the bond provided for in the ordinance contained, among other things, the following provision: "No suit to recover on account of a default hereunder shall be brought before the expiration of 60 days from the furnishing of such proof or after the expiration of 12 months from such default."

The city of Detroit started no suit against the surety company nor took any steps to enforce its claim until February 9, 1939, when it filed a petition requesting permission to file a claim to prevent the running of the statute of limitations. On March 10, 1939, an order was entered permitting the filing of the claim to be effective as of February 9, 1939; and on April 4, 1939, the city of Detroit filed its claim with the receiver of the company claiming the full sum of $300,000, being the face amount of the bond. On September 3, 1940, objections to the allowance of the city's claim were filed in behalf of the receiver for the reason that the claim is barred by the limitation period set forth in the bond and the ordinance prescribing the bond, and by the three-year extension period in the agreement of August 14, 1933.

After hearing, the trial court held that the limitation provision of the bond is legal, valid and effective; and denied claimant, city of Detroit, any relief.

The city of Detroit appeals and urges that the ordinance is a statute and any bond in compliance therewith is a statutory bond; that the limitation provision in the bond is not binding upon the city of Detroit and should be read out of the bond as surplusage for either of two reasons: First, that the limitation provision in the *ordinance* is *invalid* because a home-rule city may not by charter or ordinance fix a shorter limitation period than that prescribed by the general statute of limitations and such limitation provision can be read out of the ordinance and the other parts thereof requiring the bond to secure all public funds deposited thereunder permitted to stand. Second, that the bond being a *statutory bond*, the limitation period provided therein, being at variance with the general laws of the State, particularly as applied to public depository bonds, is inoperative. The city also contends that the limitation condition of the bond in so far as it applied to the deposit of sinking funds conflicts with Act No. 273, § 5, Pub. Acts 1925, as then last amended by Act No. 142, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 2694, Stat. Ann. § 5.3175), and is therefore surplusage; and that the limitation period, if effective, did not run against the city while the instant chancery proceedings were pending.

The receiver contends that there is no State statute requiring depository bonds to cover deposits of home-rule cities and, therefore, the bond is a common-law bond with the limitation provision fully effective.

Detroit is a home-rule city. With the exception of Act No. 273, § 5, Pub. Acts 1925, as then last

amended by Act No. 142, Pub. Acts 1931, and relied upon by the city of Detroit, there is no statute in Michigan providing for depository bonds to cover the deposits of city treasurers or other city officials of a home-rule city. This brings us to a determination of the kind of a bond involved in this case, *i.e.*, whether a statutory or common-law bond. A statutory bond is one commanded or provided by statute. In such a bond, the existing law becomes a part of the bond, omitted conditions required by law are read into the bond and conditions contrary to the law are read out of it. The doctrine of "what is omitted will be read in and what is in conflict will be read out" applies only to bonds required by statute. In such a bond the general statute of limitations* becomes a part of the bond. In a common-law bond the parties may provide for a shorter time for bringing suit than is provided by the statute of limitations and, in general, are bound by their agreement.

One method of determining the effect of the provisions in the bond is to compare the bond to the statute requiring the bond.

In *Township of Forest* v. *American Bonding Co. of Baltimore,* 187 Mich. 657, a statute (1 How. Stat. [2d Ed.] § 1408†) required each township treasurer to give a bond to the township "conditioned for the faithful discharge of the duties of his office, and that he will faithfully and truly account for and pay over according to law all moneys which shall come into his hands as such treasurer." The statute did not set up the form of the bond nor prescribe any other conditions. The bond provided that any claim for default must be presented to the surety within six months and no suit could be brought after 365

---

*See 3 Comp. Laws 1929, § 13976 (Stat. Ann. § 27.605).—RE-PORTER.

† 1 How. Stat. (2d Ed.), § 1408, is 1 Comp. Laws 1929, § 1017 (Stat. Ann. § 5.69).—REPORTER.

days. At the end of his term, the township treasurer's accounts were short. The question before this court was whether the limitation provision in the bond was valid. We there said:

"There also is no question that, if the bond was a private bond, the position taken by appellant would be tenable and sound. But we are of the opinion that a different rule must be said to apply to official bonds, and that no such bond can be given whose provisions are in contravention with the terms of our statutes applicable thereto. Treating the provisions in the bond limiting the time within which suit can be brought as surplusage, the bond then clearly would be a good and sufficient bond, in compliance with 1 How. Stat. (2d Ed.), § 1408.* By eliminating these provisions as surplusage the scope of the contract entered into between the defendant and the plaintiff is not extended, but that part of the contract which seeks to give the defendant greater rights than it would have had if the bond had been strictly in compliance with the terms of the statute is given no effect.

"In this State the statute of limitations with reference to personal actions upon a bond limits the time of commencing such actions to ten years. 3 Comp. Laws 1897, § 9734. When the defendant company became a surety on the bond of the township treasurer for the purpose of allowing him to handle the public funds, it must be presumed that, if it inserted any provision in such a bond that was contrary to the statute, such provision was void and must be treated as surplusage."

In *Lawrence* v. *American Surety Co. of New York*, 263 Mich. 586, 597, 598 (88 A. L. R. 535), this court said:

"It is a general rule that existing law becomes part of a statutory bond, *i.e.*, one commanded or

---

* 1 How. Stat. (2d Ed.), § 1408, is 1 Comp. Laws 1929, § 1017 (Stat. Ann. § 5.69).—REPORTER.

provided by statute, so that omitted conditions required by the law are read into the bond, and conditions not so required, which limit or restrict liability, are read out of it as surplusage. The rule governs not only the bonds of public officials but others. * * * It applies to depository bonds given to secure public funds. * * *

"It is not every provision of the bond not found in the statute which is void. * * * It is only those provisions which have the effect of limiting or restricting the liability imposed by statute which are surplusage."

See, also, *County of Muskegon* v. *Michigan Surety Co.,* 264 Mich. 65 (statutory depository bond):

Claimant urges that the bond is a statutory bond and relies upon *Northrup* v. *City of Jackson,* 273 Mich. 20. In that case the city of Jackson by charter attempted to provide that all tort or contract claims be presented to the city within six months after the cause of action arose. We there said:

"The requirement for presentation of claims within six months after the cause of action arises is one of limitations. * * * Such limitations have been sustained when provided by statute. But a home-rule charter may not conflict with nor contravene provisions of any general law of the State. 1 Comp. Laws 1929, § 2272. The six-month period, therefore, contravenes the general statute of limitations (3 Comp. Laws 1929, § 13976) and, in this respect, the provision must be held void. * * *

"The charter provision for presentment of claim as a condition of commencement of suit is not expressly authorized in the home-rule act, but it is in accord with the long-established public policy of the State and is not prohibited by other law. The six-month limitation clause may be stricken without effect upon the remainder of the provision. The charter requirement, therefore, must stand with the limitation deleted."

The *Northrup Case, supra,* is not controlling here, and is easily distinguished. In that case the city attempted by charter to establish a shorter period of limitation for *all* claims against the, city. Such causes of action arose, not from a breach of any rights given exclusively by the charter or ordinances of the city, but from a breach of rights given *to all by the common law and statutes.* The State having provided a limitation period by general law, any charter provision in conflict therewith is prohibited by statute. 1 Comp. Laws 1929, § 2272 (Stat. Ann. § 5.2116).

In the case at bar, the bond follows the provisions of the ordinance in so far as the funds in the welfare reserve funds and trust funds are concerned. As to those funds the bond has not the effect of a statutory bond. It follows that the 12-month limitation provision in the bond as amended by the three-year extension agreement effective August 14, 1933, is a valid provision to insert in such bond.

The filing of the petition by the city of Detroit on February 9, 1939, being subsequent to the period mentioned in the bond or the agreement of August 14, 1933, which extended the time for filing such claim to August 14, 1936, not being in compliance with the bond or agreement, may not be maintained.

It is also urged by the city of Detroit that the limitation condition of the bond as applied to the deposit of sinking funds conflicts with Act No. 273, Pub. Acts 1925, as then last amended by Act No. 142, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 2694, Stat. Ann. § 5.3175), and is surplusage; and that the limitation period did not run against the city during the pendency of the instant chancery proceedings.

In determining the above claim of the city of Detroit we again compare the statute in existence as of the date of the execution of the bond with the bond as provided for in the ordinance. The bond upon

which suit was brought was executed June 1, 1932, effective as of May 29, 1932.

Act No. 40, Pub. Acts 1932 (1st Ex. Sess.), which became effective May 14, 1932, provides that all moneys coming into the hands of any officer of the city authorized to collect the same shall be denominated "public moneys." The above act requires the legislative body of the city to provide by resolution for the deposit of all public moneys in one or more banks or trust companies to be designated therein and as to such deposit neither the treasurer nor the surety on his bond is liable for any loss occasioned by failure of the depository. It is to be noted that the above act makes no provision for a surety bond from a depository either for sinking fund moneys or any other "public moneys."

The act also provides:

"All acts and parts of acts inconsistent with the provisions of this act are hereby repealed. The operation of any law in so far as it obtains to the requiring a depository bond or bonds for the deposit of public moneys, except section three of act number one hundred five of the public acts of eighteen hundred fifty-five, as amended, being section three hundred forty-eight of the compiled laws of nineteen hundred twenty-nine, is hereby suspended until July one, nineteen hundred thirty-three. Should any provision or section of this act be held to be invalid for any reason, such holding shall not be construed as affecting the validity of any remaining portion of such section or of this act, it being the legislative intent that this act shall stand, notwithstanding the invalidity of any such provision or section."

The bond upon which the city of Detroit relied in support of its claim was executed during the time the above act was in force and effect. It is obvious that during this period there was no State law requiring a surety bond by a depository to cover city (public) moneys, either sinking funds or otherwise.

It follows that the limitation condition of the bond is not in conflict with any State law.  It is not a statutory bond insofar as these funds are concerned.  The authority requiring such a bond is found only in the ordinance and the limitation provision provided in the ordinance is a valid provision to insert in the bond.  The parties are bound by the provisions found in the ordinance and the bond as well as the three-year extension agreement.

The decree of the trial court is affirmed.  No costs will be allowed as a public question is involved.

Chandler, C. J., and Boyles, North, Starr, Butzel, and Bushnell, JJ., concurred.  Wiest, J., did not sit.